**Christopher Lundberg,** OSB No. 941084
Email:  clundberg@hk-law.com
**Matthew E.  Malmsheimer,** OSB No. 033847
Email: mmalmsheimer@hk-law.com
**HAGLUND KELLEY LLP**
200 S.W. Market Street, Suite 1777
Portland, Oregon 97201
Phone: (503) 225-0777
Facsimile: (503) 225-1257

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

(Eugene Division)

| | |
|---|---|
| NAOMI WISHART,<br><br>        Plaintiff,<br><br>  v.<br><br>LANE COUNTY SHERIFF'S OFFICE., a governmental agency of Lane County,<br><br>        Defendant. | Case No.:<br><br>**COMPLAINT FOR UNLAWFUL DISCRIMINATION IN EMPLOYMENT**<br><br>Violation of Title VII, 42 U.S.C. §§ 2000e-2 and 2000e-3; ORS 659A.030<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Naomi Wishart alleges the following:

## **JURISDICTION**

1.

This Court has original jurisdiction over Plaintiff's federal statutory claims under

28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3).  This Court has supplemental jurisdiction over

Plaintiff's pendant state claims under 28 U.S.C. § 1367.

Page 1 – **COMPLAINT**

## VENUE

2.

Venue is proper in the District of Oregon, Eugene Division, because the Defendant resides within the State of Oregon and all of the events giving rise to the claims occurred in Lane County in the State of Oregon.  28 U.S.C. § 1391(b).

## PARTIES

3.

Plaintiff Naomi Wishart is a female individual and resident of Lane County.  Ms. Wishart worked for defendant LCSO as a Deputy Sheriff in the Lane County Adult Correctional Center from July 28, 2014, until she was unlawfully terminated on August 28, 2019.

4.

Defendant Lane County Sheriff's Office ("LCSO") is a governmental agency of Lane County.  At all times material, LCSO acted by and through its agents and employees, who were acting in the course and scope of their employment and in furtherance of LCSO's interests.

## FACTS

5.

Ms. Wishart was very effective at her job and regularly received high ratings in her performance evaluations and commendations for her work.  Ms. Wishart routinely received an overall rating of "Exceeds Expectations" as well as positive feedback from her supervisors.  Until her termination, Ms. Wishart was never subject to any discipline, having zero sustained allegations of misconduct that resulted in discipline from the beginning of her employment until the incident for which LCSO terminated her.

Page 2 – **COMPLAINT**

6.

The Lane County Adult Correctional Facility is a highly male-dominated workplace. Less than ten percent (10%) of the deputies working for LCSO at that location are female.

7.

This male dominance manifests itself in a number of ways. For example, the East Annex Control post was referred to as "bitch in the box." The East Annex Control post got that nickname because it was where pregnant women would be assigned because, due to the configuration of the post, they would not be exposed to any physical interactions with inmates. To this day, that post is still referred to as "bitch in the box."

8.

Another example of this male dominance is that the female housing unit of the South Annex, which houses female inmates, is referred to as the "bitches' side."

9.

LCSO command staff was aware that LCSO employees referred to the East Annex Control post as "bitch in the box" and the South Annex as the "bitches' side," but did nothing to correct those sexist terms.

10.

Consistent with that male-dominated environment, LCSO maintains an unlawful mandatory overtime policy that imposes significantly more mandatory overtime on female deputies than male deputies. Under this policy, LCSO requires both male and female deputies to work standard mandatory overtime. However, LCSO also requires female deputies to work additional, female-targeted mandatory overtime without making any adjustments in the standard

Page 3 – **COMPLAINT**

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01-57080

mandatory overtime assignments those female deputies are assigned. The combination of assigning female-only overtime and significantly lower female deputy numbers results in female deputies being assigned to significantly greater overtime that their male counterparts.

11.

LCSO claims that the female-only mandatory overtime is not discriminatory because being female is a Bona Fide Occupational Qualification ("BFOQ") for those shifts where female-only mandatory overtime is required as a way to ensure the privacy rights of female inmates and avoid cross-gender pat down and cavity searches of female inmates. LCSO refers to those mandatory overtime assignments as "BFOQ overtime."

12.

Respondent's claimed "BFOQ" mandatory overtime as it was structured when Ms. Wishart was employed by LCSO is not reasonably necessary to the operations of the Lane County Adult Correctional Facility.

13.

One proposed solution to the excess mandatory overtime assigned to female deputies was to take account of the fact that female deputies are exposed to more overtime than male deputies and compensate for that fact by limiting the amount of general mandatory overtime assigned to female deputies who have already worked a female-only mandatory overtime shift. LCSO considered and rejected that solution because, in the words of LCSO command staff, it might "lead to . . . the creation of resentment from the male staff[.]"

14.

There are numerous other ways to address the need to have female personnel available to

Page 4 – **COMPLAINT**

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01-57080

conduct necessary searches of female inmates without imposing greater mandatory overtime burdens on female deputies. For example, other agencies utilize command staff as needed, call in female officers from patrol or other agencies, or allow other sworn personnel such as records clerks to conduct searches of female inmates when a female deputy is not available. However, when Ms. Wishart raised these possible solutions, LCSO rejected them out of hand, telling Ms. Wishart that it would not consider other agencies' solutions to the issue.

15.

LCSO does not consistently enforce its BFOQ requirements to ensure female inmate privacy rights.

16.

For example, two of the units at the Lane County Adult Correctional Facility, the intake and segregation units, house both male and female inmates, yet generally are staffed exclusively with only male deputies. At that housing unit, LCSO simply does not conduct pat down or cavity searches of female inmates, even after those inmates have had contact visitation with people from outside the institution. Another example of this failure is that male deputies frequently conduct unannounced unit searches where female inmates are unclothed and showering.

17.

LCSO has similarly made exceptions to the female staffing levels at locations that it claims are BFOQ posts for female deputies, allowing fewer than the standard number of female deputies it claims are necessary to run the facility. LCSO has allowed exceptions for certain female deputies to do things such as canning vegetables or letting their dog out of their in-home

Page 5 – **COMPLAINT**

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01-57080

kennel.  On at least one occasion, LCSO assigned Ms. Wishart a BFOQ mandatory overtime shift, but then relieved her half-way through that shift with a male deputy.

18.

Ms. Wishart has consistently questioned and voiced her opposition to LCSO's discriminatory mandatory overtime policy for years, since shortly after she started serving as a Deputy Sheriff.

19.

Ms. Wishart became particularly vocal in her opposition to this policy in the Spring of 2019, after LCSO forced her to miss a court-ordered visitation between her ex-husband and her children by requiring her to work a BFOQ mandatory overtime shift.

20.

On or around June 12, 2019, Ms. Wishart met with command staff to yet again raise her concerns about the discriminatory female-only mandatory overtime policy.  Command staff again either discounted or refused to consider the possible solutions that she offered to eliminate the discriminatory policy.

21.

On or around June 29, 2019, LCSO again ordered Ms. Wishart to accept a female-only mandatory overtime.

22.

Ms. Wishart had worked a mandatory overtime on her previous shift and was approximately 21st on the general list for mandatory overtime.  Nonetheless, LCSO indicated that Ms. Wishart would need to take the mandatory overtime shift.

Page 6 – **COMPLAINT**

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01-57080

23.

Ms. Wishart initially asked that an exception be made because she had long-standing plans for that evening, which Respondent refused. Ms. Wishart also attempted to find another female deputy to cover her shift, but that effort was not fruitful.

24.

Eventually, LCSO indicated that Ms. Wishart could satisfy the mandatory overtime by working the first two hours of it because they had found someone to come in early. However, at that point, after years of having raised the issue with no positive response and with all of her efforts to reasonably change the policy summarily ignored by Command Staff, Ms. Wishart decided that she needed to more strongly oppose this discriminatory policy. Accordingly, she refused to work the mandatory overtime shift.

25.

As the result of Ms. Wishart's refusal to work that shift, she was terminated from her position as a Deputy Sheriff with the Lane County Sheriff's Office on or around August 28, 2019.

26.

As a result of LCSO's conduct described above, Ms. Wishart has suffered economic damages, including lost wages, benefits, PERS benefits, and costs of retraining, in an amount to be specifically proved at trial, but currently estimated not to exceed $691,000. Additionally, Ms. Wishart has suffered noneconomic damages in a specific amount to be decided by a jury, not to exceed $250,000.

Page 7 – **COMPLAINT**

27.

Ms. Wishart has attempted to mitigate her damages.

28.

Ms. Wishart has exhausted her administrative remedies before both the Equal

Employment Opportunity Commission and the Oregon Bureau of Labor and Industries. Ms.

Wishart received a notice of right to sue from the EEOC on August 17, 2020. Ms. Wishart

received a notice of right to sue from BOLI on May 29, 2020.

## **CLAIMS FOR RELIEF**

### **First Claim for Relief**

(Violation of Title VII, 42 U.S.C. § 2000e-2 – Disparate Treatment on Account of Sex)

29.

Plaintiff Naomi Wishart realleges the allegations set forth above.

30.

As set forth above, Ms. Wishart was subjected to disparate treatment on account of her

sex by being forced to work overtime in excess of her male colleagues.

31.

As a result, Ms. Wishart has suffered noneconomic damages in an amount to be

specifically proven at trial not to exceed $50,000. In addition to any compensatory relief she is

awarded, Ms. Wishart is entitled to her reasonable attorney fees under 42 U.S.C. § 2000e-5(k).

///

///

Page 8 – **COMPLAINT**

**Second Claim for Relief**

(Violation of Title VI, 42 U.S.C. § 2000e-3 – Retaliation)

32.

Plaintiff Naomi Wishart realleges the allegations set forth above.

33.

As set forth above, Ms. Wishart engaged in protected activity by opposing discrimination directed at her on account of her sex and insisting that LCSO correct the same.

34.

As set forth above, LCSO was aware of Ms. Wishart's reports of discrimination and retaliated against her on account of that protected activity, which included allowing or creating a hostile work environment and terminating her employment.

35.

Ms. Wishart reported her concerns about a hostile work environment to LCSO.  LCSO failed to effectively remediate Ms. Wishart's concerns and to take any steps to deter future harassment, which led to additional acts of hostility against Ms. Wishart.

36.

Defendant's retaliation would dissuade a reasonable person in Ms. Wishart's circumstances from engaging in protected activity.

37.

As a result of this retaliation, Ms. Wishart has suffered economic damages in an amount to be specifically proven at trial not to exceed $691,000.  Ms. Wishart has also suffered noneconomic damages in an amount to be specifically proven at trial not to exceed $200,000.  In

Page 9 – **COMPLAINT**

addition to any compensatory relief she is awarded, Ms. Wishart is entitled to her reasonable attorney fees under 42 U.S.C. § 2000-e 5(k).

## Third Claim for Relief

### (Violation of ORS 659A.030 – Disparate Treatment on Account of Sex)

38.

Plaintiff Naomi Wishart realleges the allegations set forth above.

39.

As set forth above, Ms. Wishart was subjected to disparate treatment on account of her sex by being forced to work overtime in excess of her male colleagues.

40.

As a result, Ms. Wishart has suffered noneconomic damages in an amount to be specifically proven at trial not to exceed $50,000. In addition to any compensatory relief, Ms. Ringhand is entitled to her reasonable attorney fees under ORS 659A.885.

## Fourth Claim for Relief

### (Violation of ORS 659A.030 – Retaliation)

41.

Plaintiff Naomi Wishart realleges the allegations set forth above.

42.

As set forth above, Ms. Wishart engaged in protected activity by opposing discrimination directed at her on account of her sex and insisting that LCSO correct the same.

43.

As set forth above, LCSO was aware of Ms. Wishart's reports of discrimination and

Page 10 – **COMPLAINT**

retaliated against her on account of that protected activity, which included allowing or creating a

hostile work environment and terminating her employment.

44.

Ms. Wishart reported her concerns about a hostile work environment to LCSO. LCSO

failed to effectively remediate Ms. Wishart's concerns and to take any steps to deter future

harassment, which led to additional acts of hostility against Ms. Wishart.

45.

Defendant's retaliation would dissuade a reasonable person in Ms. Wishart's

circumstances from engaging in protected activity.

46.

As a result of this retaliation, Ms. Wishart has suffered economic damages in an amount

to be specifically proven at trial not to exceed $691,000. Ms. Wishart has also suffered

noneconomic damages in an amount to be specifically proven at trial not to exceed $200,000. In

addition to any compensatory relief, Ms. Ringhand is entitled to her reasonable attorney fees

under ORS 659A.885.

///

///

///

///

///

///

///

Page 11 – **COMPLAINT**

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PI.01-57080

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Naomi Wishart prays for relief as follows:

1.      For judgment in her favor in the amount of $941,000;

2.      For her reasonable attorney fees;

3.      For her reasonable costs incurred herein; and

4.      For such other relief as the Court deems just and proper.


DATED this 24th day of August, 2020.

**HAGLUND KELLEY LLP**


*s/ Christopher Lundberg*
Christopher Lundberg, OSB No. 941084
Matthew E. Malmsheimer, OSB 033847
Attorneys for Plaintiff


Page 12 – **COMPLAINT**